IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BRYAN CARNITHAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 11-CV-312-NJR-DGW |
| ) | |
| COMMUNITY HEALTH SYSTEMS, INC., ) | |
| MARION HOSPITAL CORPORATION, ) | |
| and ) | |
| COMMUNITY HEALTH SYSTEMS ) | |
| PROFESSIONAL SERVICE ) | |
| CORPORATION, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Defendant Community Health Systems, Inc. ("CHS Inc.") owns over one hundred subsidiary companies that in turn own and operate hospitals around the country. All of the hospitals are managed and operated by another subsidiary company, Community Health Systems Professional Services Corp. ("CHSPSC"). The hospital at the heart of this matter is Heartland Regional Medical Center in Marion, Illinois, which is owned by CHS Inc.'s subsidiary company, Marion Hospital Corp. ("MHC").

Plaintiff Bryan Carnithan previously worked at Heartland as the EMS coordinator in the emergency department. In that position, he became aware of the hospital's practice of admitting all Medicare and Medicaid recipients who came to the emergency room regardless of whether it was reasonable or necessary. Carnithan was concerned that the admission practice was fraudulent, and he took his concerns to the CEO of the hospital. Following that conversation, Carnithan was moved into a much smaller office, and he

believed that he was ultimately going to be terminated based on the actions and comments of others. In order to avoid having a termination on his employment record, Carnithan resigned from his position in September 2006.

In April 2011, Carnithan filed this lawsuit under seal on behalf of the United States and fourteen states alleging that Heartland, and over one hundred other hospitals affiliated with CHS Inc., submitted false claims or statements to the federal Medicare program and various state Medicaid programs ("the qui tam claims") (Docs. 1, 12). Carnithan also alleged that he was constructively discharged from his job at Heartland in retaliation for questioning the fraudulent admission practice ("the retaliatory discharge claims") (Docs. 1, 12). Over three years later, the United States elected to intervene in part, and the complaint was unsealed (Doc. 40, 41). Shortly thereafter, the Government notified the Court that the parties had reached a settlement on the qui tam claims (Docs. 42, 46).

In order to clarify what claims and parties remained in this action, the Court directed Carnithan to file a second amended complaint (Doc. 46). What is left are Carnithan's claims against CHS Inc., CHSPSC, and MHC for retaliatory discharge in violation of the federal False Claims Act ("federal FCA"), the Illinois False Claims Act ("Illinois FCA"), and Illinois common law (Doc. 56). This matter is currently before the Court on the motion to dismiss the second amended complaint filed by CHSPSC and MHC (Doc. 77), as well as the motion to dismiss filed by CHS Inc. (Doc. 89).

## DISCUSSION

The purpose of a motion to dismiss under Rule 12(b)(6) is to address the legal sufficiency of the plaintiff's claim for relief; it does not look at the merits of the plaintiff's claim or decide whether the plaintiff will ultimately prevail. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). In ruling on a motion to dismiss, the court must construe the

complaint in the light most favorable to the plaintiff, accept as true all well-pleaded facts, and draw all possible inferences in the non-moving party's favor. *See, e.g., Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (quoting *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008)). To survive a motion to dismiss, plaintiffs need only allege enough facts to state a claim to relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

### I. Count 3—Retaliatory Discharge Under Illinois Common Law

The Court will begin its discussion with Carnithan's claim for retaliatory discharge under the common law of Illinois. Defendant CHS Inc. argues this claim should be dismissed because the only proper defendant for a common law retaliatory discharge claim is the employer, but CHS Inc. was not Carnithan's employer; according to the second amended complaint, Marion Hospital was Carnithan's employer (Doc. 90).

The Court sees a much more fundamental problem with Carnithan's claim that Defendants did not bring up. Carnithan has not alleged that he was actually terminated from his position at Marion Hospital because he questioned the hospital's fraudulent admission procedures (*see* Doc. 56). Instead, he has alleged that he was constructively discharged (Doc. 56, ¶¶22, 33). Illinois law, however, does not recognize a cause of action for retaliatory constructive discharge. *Bannon v. Univ. of Chi.*, 503 F.3d 623, 630 (7th Cir. 2007) (citing *Fisher v. Lexington Health Care, Inc.*, 722 N.E.2d 1115, 1121 (Ill. 1999)); *Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 708 (7th Cir. 2004) (collecting cases).

It is well-settled that a court can *sua sponte* dismiss a claim for failure to state a claim upon which relief can be granted. *See, e.g., Dawson v. Newman*, 419 F.3d 656, 660 (7th Cir. 2005). Before doing so, however, the plaintiff should be given notice and an opportunity to respond. *Id.* Accordingly, Carnithan has thirty days to respond and explain to the Court why

Count 3 should not be dismissed with prejudice for failure to state a claim.

## II. Counts 1 and 2—Retaliatory Discharge Under Federal FCA and Illinois FCA

### A. Statute of Limitations

Defendants first argue that Carnithan's claims for retaliatory discharge under the federal False Claims Act (Count 1) and the Illinois False Claims Act (Count 2) are barred by the statute of limitations (Doc. 78, pp. 4–5; Doc. 90, pp. 3–4). Defendant point out that the federal FCA and Illinois FCA have three-year limitation periods for retaliation claims, and they argue that because Carnithan's claims accrued in September 2006 and suit was not filed until April 2011, his claims are time-barred (Doc. 78, pp. 4–5; Doc. 90, pp. 3, 4). Defendants' truncated arguments are woefully inadequate, however, because the issue of whether the limitations periods apply to Carnithan's claims is far less cut and dry than Defendants made it seem.

Both of the three-year limitations periods were enacted mid-stream, so to speak. This timing matters. A lot. But Defendants simply failed to acknowledge it. They did not mention that, at the time Carnithan's claims accrued in September 2006, neither the federal FCA nor the Illinois FCA supplied a limitations period for retaliatory discharge claims, and so his claims were subject to the five-year catch-all statute of limitations in 735 ILL. COMP. STAT. 5/13-205. *See Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 545 U.S. 409, 415–16, 422 (2005); *Teumer v. Gen. Motors Corp.*, 34 F.3d 542, 548 (7th Cir. 1994) (citing *Henon v. Lever Brothers Co.,* 449 N.E.2d 196 (Ill. App. Ct. 1983); *Webb v. Gardner, Carton & Douglas LLP Long Term Disability Plan*, 899 F. Supp. 2d 788, 798 (N.D. Ill. 2012)). It wasn't until July 2010 that the federal FCA was amended to add the three-year limitations period. And the Illinois FCA was not amended until August 2012. MHC and CHSPSC at least

informed the Court of these dates, while CHS Inc. did not mention them (Doc. 78, pp. 4, 5; *see* Doc. 90).

None of the Defendants, however, addressed that when the three-year limitations period was added to the federal FCA, Carnithan's claims had already accrued, but the old limitations clock had not yet expired. More egregiously, Defendants did not acknowledge that when the three-year limitations period was added to the Illinois FCA, not only had Carnithan's claims accrued, but he had already filed suit. And Defendants did not bother to provide any explanation, let alone citations to any legal authority, showing that the new limitations periods should apply retroactively in either situation. Simply put, Defendants wholly ignored nuances crucial to their statute of limitations argument.

The lack of explanation and supporting legal authority is particularly problematic because the answer to whether the new limitations periods apply under these circumstances "is by no means self-evident," as another district court stated. *Saunders v. District of Columbia*, 789 F. Supp. 2d 48, 53 (D.D.C. 2011). It is not the Court's job to navigate the thicket of legislative materials and applicable case law to supply the research that Defendants omitted. *United States v. Holm,* 326 F.3d 872, 877 (7th Cir. 2003) ("It is not the obligation of this court to research and construct the legal arguments open to parties, especially when they are represented by counsel.") (citation omitted). Accordingly, the Court declines to address the merits of Defendants' abbreviated and unsupported statute-of-limitations argument, and finds that it has been waived. *See, e.g., id.* ("We have repeatedly warned that "perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived . . . .") (citation omitted).

### B. Failure to State a Claim

Defendants next argue that Carnithan failed to state a claim for retaliatory discharge under the federal False Claims Act (Count 1) and the Illinois False Claims Act (Count 2) for a number of reasons (Doc. 78, pp. 5–11; Doc. 90, p. 5). These arguments, however, disregard controlling precedent.

In order to state a claim for retaliation under the federal FCA or the Illinois FCA, the plaintiff must allege: (1) that he was engaged in protected conduct under the statute; (2) that defendants knew he was engaged in protected conduct; and (3) that defendants were motivated, at least in part, to terminate him because of the protected conduct. *See United States ex rel. Ziebell v. Fox Valley Workforce Dev. Bd., Inc.*, No. 14-1780, 2015 WL 7567016, at *5 (7th Cir. Nov. 25, 2015); *Fanslow v. Chicago Mfg. Ctr., Inc.*, 384 F.3d 469, 479 (7th Cir. 2004); *Brandon v. Anesthesia & Pain Mgmt. Assoc., Ltd.*, 277 F.3d 936, 944 (7th Cir. 2002).[1]

Defendants first argue Carnithan failed to sufficiently plead that he engaged in any protected activity (Doc. 78, p. 6). The statutes provide that an employee may not be retaliated against "because of lawful acts done by the employee . . . in furtherance of an action under this section or other efforts to stop one or more violations of [the federal or Illinois False Claims Act]." 31 U.S.C. § 3730(h)(1); 740 ILL. COMP. STAT. 175/4(g)(1). Here, Carnithan alleged that he reported to Marion Hospital's CEO his concerns regarding the

---

[1] "Courts analyzing claims under the FCA and Illinois FCA treat the statutes equally because of the similarity of the language." *United States ex rel Helfer v. Associated Anesthesiologists of Springfield, Ltd.*, No. 10-3076, 2014 WL 4198199, at *9 (C.D. Ill. Aug. 25, 2014). *See also McDonough v. City of Chi.*, 743 F.Supp.2d 961, 987 (N.D.Ill. 2010) (applying Seventh Circuit standard for claim under federal FCA to Illinois FCA claim); *State ex rel. Beeler, Schad & Diamond, P.C. v. Burlington Coat Factory Warehouse Corp.*, 860 N.E.2d 423, 426 (Ill. App. Ct. 2006) ("The [Illinois False Claims Act] 'closely mirrors' the federal False Claims Act." (quoting *Scachitti v. UBS Fin. Serv.*, 831 N.E.2d 544, 557 (Ill. 2005))); *People ex rel. Levenstein v. Salafsky*, 789 N.E.2d 844, 849 (Ill. App. Ct. 2003) ("We presume that, when our legislature passed the [Illinois FCA], it was aware of federal court opinions that had construed the False Claims Act. Thus, we also give weight to federal court opinions that interpreted the federal law before the Act was passed." (internal citations omitted)).

practice of admitting all Medicare and Medicaid emergency room patients for inpatient services (Doc. 56, ¶¶18, 19). Lodging an internal complaint with one's employer constitutes a protected activity. *United States ex rel. Grenadyor v. Ukrainian Vill. Pharm., Inc.*, 772 F.3d 1102, 1108 (7th Cir. 2014), *cert. denied*, 136 S. Ct. 49 (2015) ("[R]etaliation for fling an internal complaint (that is, a complaint with one's employer, as distinct from a lawsuit) is forbidden." (citing *Fanslow v. Chi. Mfg. Ctr., Inc.*, 384 F.3d 469, 481 (7th Cir. 2004))). Thus Carnithan has sufficiently pleaded that he was engaged in a protected activity. *See Grenadyor*, 772 F.3d at 1108–09 (holding that pharmacist stated an FCA retaliation claim when he alleged he was fired after relaying concerns to his superiors about kickbacks to customers and other unlawful acts he claimed to have observed).

Defendants next argue Carnithan failed to sufficiently plead that Defendants knew he was engaged in protected conduct (Doc. 78, p. 7). This argument is of no moment. As previously mentioned, Carnithan alleged that he went directly to Marion Hospital's CEO to report his concerns. Therefore, Defendants quite obviously knew that Carnithan was engaged in protected activity.

    C.    **Basis of Liability for CHS Inc. and CHSPSC**

CHSPSC and CHS Inc. argue that they cannot be liable to Carnithan for retaliatory discharge because he did not allege that he was employed by them; instead, he alleged that he was employed by MHC (Doc. 56, ¶5; Doc. 78, pp. 9–10; Doc. 90, pp. 6–7). The Court is unpersuaded.

As originally enacted, the federal FCA's anti-retaliation provision prohibited retaliation against "any employee . . . by his or her employer." False Claim Amendments Act, Pub.L. 99–562, 100 Stat. 3153 (1986). The federal FCA was amended in 2009, however, to

expand the scope of the anti-retaliation provision to "[a]ny employee, contractor, or agent" and eliminated the word "employer." Fraud Enforcement and Recovery Act of 2009, Pub. L. 111–21, 123 Stat. 1617, 1624–25. The purpose of this amendment was intended to "assist individuals who are not technically employees within the typical employer-employee relationship, but nonetheless have a contractual or agent relationship with an employer." S. REP. 110-507, at p. 27 (2008), *available at* 2008 WL 4415147. In other words, "the 2009 amendment to § 3730(h) was a device to accommodate . . . the broader group of potential defendants who are in employer type roles but may not technically be employers." *United States ex rel. Abou-Hussein v. Sci. Applications Int'l Corp.*, No. CIV.A. 2:09-1858-RMG, 2012 WL 6892716, at *3 n.4 (D.S.C. May 3, 2012), *aff'd*, 475 Fed.Appx. 851 (4th Cir. 2012). *Accord Tibor v. Michigan Orthopaedic Inst.*, 72 F. Supp. 3d 750, 759 (E.D. Mich. 2014) ("[I]t is clear that the purpose [of the 2009 amendment] was to ensure that the protections of the Act extended beyond a traditional employment relationship."). *See also Vander Boegh v. EnergySolutions, Inc.*, 772 F.3d 1056, 1062 (6th Cir. 2014) ("[A]fter Congress amended the FCA to include contractors and agents . . . Congress still intended to limit the FCA to employment-like relationships."); *Wichansky v. Zowine*, No. CV-13-01208-PHX-DGC, 2014 WL 289924, at *3 (D. Ariz. Jan. 24, 2014) ("Cases that examine the legislative history have concluded that the 2009 amendments were intended to retain the requirement that an FCA defendant have some employer-type relationship with the plaintiff.")

So the question for the Court is whether Carnithan had an employment-like relationship with CHS Inc. and CHSPSC.[2] Carnithan argues that "on paper he was

---

[2] According to Carnithan, both CHS Inc. and CHSPSC can be held liable for retaliatory discharge as his "joint employers" (Doc. 83, p. 16; Doc. 96, p. 8). Carnithan further argues that CHS Inc. can be held liable under the "direct participant" theory of liability (Doc. 96, p. 8, 9). The Court is not sure whether either theory applies in this matter. Carnithan did not discuss the potential application of either theory in the context of retaliation

employed by MHC," but CHSPSC "held significant control over his employment and the conditions under which he worked," and CHS Inc. in turn "controlled the operations of CHSPSC." (Doc. 83, p. 16; Doc. 96, p. 8). Put differently, according to Carnithan, he was not technically employed by CHS Inc. or CHSPSC, but he had an employment-like relationship with each. To that end, Carnithan specifically alleged that CHSPSC provided management services and controlled the daily operations of MHC (Doc. 56, ¶11). And CHS Inc. was the parent company of CHSPSC and directed its operations (Doc. 56, ¶24, 35). The CEO of Marion Hospital was an employee of CHSPSC (Doc. 56, ¶13). CHSPSC issued the fraudulent admissions directive to Marion Hospital, and hospital employees had to answer to the CEO when Medicare or Medicaid beneficiaries were released from the emergency room instead of being admitted to the hospital (Doc. 56, ¶¶12, 14, 15). After Carnithan relayed his concerns about the fraudulent admission practice to the CEO, he was retaliated against (Doc. 56, ¶¶19, 20).

Based on these allegations, the Court can reasonably infer that CHSPSC and CHS Inc. had some control over the conditions and terms of his employment, including the power to demote or discharge him. Accordingly, Carnithan has sufficiently alleged an employment-like relationship with CHSPSC and CHS Inc. for purposes of the retaliation provisions of the federal False Claims Acts and the Illinois False Claims Acts. Although Carnithan ultimately may not be able to set forth evidence necessary to survive summary judgment against these Defendants, he has alleged enough at this point to survive their

---

claims under the federal False Claims Act or the Illinois False Claims Act, or cite to any case law where the theories were actually applied in that context (*see* Doc. 83, Doc. 96). At any rate, the essence of the test employed by the Court—whether CHS Inc. or CHSPSC had an employment-like relationship with Carnithan—is largely the same as the "joint employer" theory and the "direct participant" theory. They all look at whether the companies had any element of control over the terms, conditions, and operation of Carnithan's job.

motions to dismiss.

## CONCLUSION

The motion to dismiss filed by Defendants Marion Hospital Corp. and Community Health Systems Professional Services Corp. (Doc. 77) and the motion to dismiss filed by Defendant Community Health Systems, Inc. (Doc. 89) are **DENIED**.

Plaintiff Brian Carnithan has thirty days—until **January 19, 2016**—to show cause why his common law retaliatory discharge claim (Count 3) should not be dismissed with prejudice.

**IT IS SO ORDERED.**

DATED:   December 17, 2015

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**